# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

SAZERAC COMPANY, INC.,
a Louisiana corporation,

       Plaintiff,

v.

                                                     **Case No.    3:12-CV-00079-CRS**

HOOD RIVER DISTILLERS, INC.,
an Oregon corporation,

       Defendant.

---

**SAZERAC COMPANY, INC.'S OPPOSITION TO HOOD RIVER DISTILLERS, INC.'S MOTION TO TRANSFER**

---

I.——INTRODUCTION

Sazerac Company, Inc. ("Sazerac") is a Louisiana-based company that, since 1992, has made Kentucky its second home. After purchasing the George T. Stagg Distillery in Frankfort, Kentucky in 1992, and after approximately seven years of reconstruction and renovations, Sazerac renamed it the Buffalo Trace Distillery and launched its BUFFALO TRACE branded bourbon. Since the Buffalo Trace christening, Sazerac has solidified its ties with the State of Kentucky significantly. The company currently owns and operates three distilleries (the Buffalo Trace in Frankfort, the Barton 1792 Distillery in Bardstown, and the Glenmore Distillery in Owensboro), multiple bottling and warehouse facilities, and maintains two corporate offices within the state. Today, Sazerac employs over 700 individuals in Kentucky.

Sazerac sued Hood River Distillers, Inc. ("Defendant") in this district for federal trademark and trade dress infringement under the Lanham Act and related state claims because of Defendant's use of the SINFIRE trademark and corresponding trade dress for its SINFIRE cinnamon whisky. The SINFIRE trademark and trade dress are confusingly similar to Sazerac's FIREBALL cinnamon whisky trademark and trade dress and its FIRE WATER cinnamon liqueur trademark and trade dress.

At the time this action was commenced, Defendant's distribution and sale of its SINFIRE cinnamon whisky in Kentucky was imminent and impending. Defendant had already announced through an industry-wide press release that its SINFIRE whisky would be available for national distribution in February 2012, and had already advertised and promoted its SINFIRE whisky on its website, which also identified that its products were available in Kentucky. In addition, Defendant had already established a relationship with a distributor located in Louisville, Kentucky that Defendant used to regularly and systematically market and distribute its distilled spirits within the state.

Despite answering and asserting counterclaims against Sazerac (Dkt. No. 23), Defendant denies that this Court is the proper venue for this action and seeks to transfer this case to the District of Oregon pursuant to 28 U.S.C. §§ 1631 and 1406(a).  Defendant claims that venue is not proper because this Court has no personal jurisdiction over it or, in the alternative, that this case should be transferred for the convenience of the parties and witnesses and in the interest of justice pursuant to 28 U.S.C. § 1404(a) ("Defendant's Motion").  (Dkt. No. 25-1.)

Defendant's Motion lacks merit and should be denied.  As an initial matter, venue is proper in a Lanham Act case where consumer confusion is likely to occur.  Venue is also proper because this Court has personal jurisdiction over Defendant.  Defendant's contacts with Kentucky satisfy the Kentucky long-arm statute and ensure that exercising jurisdiction over Defendant would not violate due process.  Thus, Defendant's request to transfer under Section 1406(a) for improper venue fails.  For the same reasons, Defendant's request to transfer under Section 1631 also fails.

Defendant's last request, to transfer pursuant to Section 1404(a) for the convenience of the parties and witnesses and in the interest of justice is equally without merit.  The inconvenience Defendant alleges it will suffer by having to litigate this case in Kentucky does not outweigh the strong deference given to plaintiff's choice of forum; the convenience for Sazerac—the plaintiff—to litigate this case in Kentucky where much of its distillation, bottling, labeling, and warehousing operations are located and much of its evidence resides; and the interest of this State to protect Sazerac from Defendant's infringing activities and Kentucky's residents from consumer confusion.  Thus, Defendant's Motion should be denied in its entirety.

This Court's personal jurisdiction over Defendant is further reinforced by Defendant's recent SINFIRE cinnamon whisky sales activities in Kentucky.  As Defendant admits, its

distribution of SINFIRE cinnamon whisky in Kentucky is no longer imminent and impending; it is now a reality.  (Dkt. No. 25-1 at 3; Dkt. No. 25-2 at ¶ 11.)  Sazerac's amended complaint alleges that Defendant now ships and distributes its SINFIRE cinnamon whisky in Kentucky—an allegation that makes it more clear that venue is proper and that Defendant's Motion should be denied.

In order to save the Court and the parties the expense of addressing Defendant's meritless motion, Sazerac contacted Defendant and ask it to withdrawal its motion.  Sazerac has not received a substantive response from Defendant and thus, was forced to file this opposition.

## II.   FACTUAL BACKGROUND

### A.   Defendant Conducts Business In This District and Targets Kentucky Residents.

According to Defendant's website, "Hood River Distillers is the largest and oldest importer, producer, bottler and marketer of spirits in the northwest" and "distributes its products nationwide."  (Declaration of Lori Mayall in Support of Sazerac's Opposition to Motion to Transfer ("Mayall Decl."), Ex. A.)  Its distilled spirits include:  "Pendleton® Whisky, Pendleton 1910™, Broker's London Dry Gin, SinFire™ Cinnamon Whisky, Yazi Ginger Vodka, Knickers Irish Cream Whiskey, ULLR Nordic Libation, HRD Vodka and the complete line of Monarch distilled spirits."  (*Id.*)  Additionally, Defendant's website promotes and advertises its products nationwide, including its SINFIRE cinnamon whisky.  (*Id.*, Ex. B.)

Defendant ships and distributes its products, including its SINFIRE cinnamon whisky, in Kentucky.  (Dkt. No. 25-1 at 3.)  Specifically, "[i]n 2011, [Defendant] shipped a total of 211 cases of product for ultimate distribution in Kentucky … [and,] [o]n or about March 26, 2012, [Defendant] shipped 56 cases of SINFIRE product to an independent distributor for ultimate retail sale in Kentucky."  (*Id.* at 3.)  Furthermore, an ingredient used in Defendant's SINFIRE

cinnamon whisky was purchased by Defendant from a company located in Kentucky.  (*Id*. at 3, fn. 1.)

As early as January 30, 2012, Defendant specifically announced that its SINFIRE cinnamon whisky would be "[a]vailable for national distribution in February 2012."  (Dkt. No. 1 at ¶ 28.)  And according to Defendant's "Product Availability" page on its website, Defendant's products are available in Kentucky via a distributor located in Louisville.  (Mayall Decl., Ex. C.)

It is undisputed that Defendant transacts business in this district and contracts to supply its products, including its SINIRE cinnamon whisky, to Kentucky residents.

> ~~B.~~      **Sazerac Has Extensive Ties to Kentucky.**

Sazerac is a leading distiller of spirits and the namesake of America's first commercially promoted and sold cocktail—the Sazerac Cocktail.  (Declaration of Steve Wyant in Support of Sazerac's Opposition to Motion to Transfer ("Wyant Decl."), ¶ 2.)  Sazerac is a Louisiana-based company with extensive ties and operations in Kentucky.  (*Id.* at ¶¶ 4-8.)  Sazerac produces a variety of distilled spirits, including vodka, whiskey, and liqueurs, and has three bottling facilities in Kentucky alone.  (*Id.* at ¶¶ 3, 6.)  Sazerac bottles and labels a hundred and fifty different brands in Kentucky, including its FIREBALL cinnamon whisky (*Id.* at ¶ 6), one of the brands it alleges Defendant's SINFIRE cinnamon whisky infringes in this litigation.

In 1992, Sazerac purchased the George T. Stagg Distillery in Frankfort, Kentucky, and after approximately seven years of reconstruction and renovations, Sazerac renamed the distillery the Buffalo Trace Distillery and launched its BUFFALO TRACE branded bourbon.  (*Id.* at ¶ 4.)  Today, Sazerac also owns and operates three distilleries in Kentucky:  The Buffalo Trace Distillery and the Barton 1792 Distillery, both located along the bourbon trail in Frankfort and Bardstown, respectively, and The Glenmore Distillery, located in Owensboro.  (*Id.* at ¶ 5.)  It maintains corporate offices in Louisville and Frankfort, Kentucky, and key members of its

management, including its CEO and CFO, live and work in Kentucky.  (*Id.* at ¶ 7.)  In fact, Sazerac employs over 700 individuals in Kentucky.  (*Id.* at ¶ 8.)

Sazerac has no offices, management, distilleries, or production facilities in Oregon and no Oregon-based employees.  (Wyant Decl., ¶¶ 9-13.)

Given Sazerac's extensive ties to Kentucky, litigating this case here is not only convenient, but also important to the protection of the company's business.  This state has a strong interest in protecting Sazerac from Defendant's infringing activities and its residents from a likelihood of consumer confusion.

III.    ARGUMENT

Defendant's motion to transfer pursuant to 28 U.S.C. §§ 1631 and 1406(a) fails not only because this is a Lanham Act case and venue is proper where consumer confusion is likely to occur, but also because this Court has personal jurisdiction over Defendant.  Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) also fails when consideration is given to the deference of plaintiff's choice of forum, Sazerac's significant ties to Kentucky and this district, and this Court's interest in protecting Sazerac from Defendant's infringing activities and its residents from consumer confusion.

A.    **Venue Is Proper Because Consumer Confusion Is Likely to Occur In This District.**

Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in any district "in which a substantial part of the events or omissions giving rise to the claim occurred."  In a trademark suit brought under the Lanham Act, such as this case, a "substantial part" of the events giving rise to the claims occurs in any district where consumers are likely to be confused by the accused goods, "whether that occurs solely in one district or in many." *Cottman Transmission Sys. v. Martino,* 36 F.3d 291, 295 (3d Cir.1994); *see also Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995) ("The

place where the alleged passing off occurred ... provides an obvious correct venue."); *see also*

*Community Trust Bancorp. Inc. v. Community Trust Financial Corp.*, Case No. 7:10-cv-062,

2011 WL 673751, at *8 (E.D.Ky. Feb. 17, 2011) ("Courts have found that venue is proper in

Lanham Act cases … in the district where 'confusion about the origin of [the trademark owner's]

product [is] likely to occur.'") (quoting *Antioch Co. v. Pioneer Photo Albums, Inc.*, Case No. C-

3-99-270, 2000 WL 988249, at *6 (S.D.Ohio Mar. 13, 2000)).

 Sazerac alleged in its original complaint that venue is proper because "it is imminent that

Defendant's tortious conduct [*i.e.*, use and display of its confusingly similar trademark and trade

dress in commerce] will occur in this district" and that a "substantial part of the events or

omissions giving rise to the claim occurred in this district." (Dkt. No. 1 at ¶ 7.)

 At the time this action was commenced, Defendant marketed and distributed its distilled

spirits throughout the United States and specifically in Louisville, Kentucky, and Defendant had

immediate plans to distribute its SINFIRE cinnamon whisky in Kentucky. (Dkt. No. 1 at ¶¶ 28-

29.) Based on Defendant's contacts with Kentucky at the time the original complaint was filed,

Defendant's infringing activities within Kentucky were imminent and impending and, on that

basis, Sazerac sought injunctive and other relief. Sazerac was not required to wait until

infringement actually occurred to take action to prevent it. *See* 5 McCarthy on Trademarks and

Unfair Competition § 30:10 (4th ed.) ("It is a mainstay of equity jurisprudence that one need not

wait for actual injury to occur if it is imminent and impending."); *see also Indianapolis Colts,*

*Inc. v. Metropolitan Baltimore Football Club Ltd Partnership*, 34 F.3d 410, 412 (7th Cir. 1994)

(finding it proper for plaintiff to seek injunctive relief before the infringing sales took place in

the state).

 At the time Sazerac filed its complaint, Defendant's infringement in this district was

imminent and consumer confusion was likely to occur in this district as well as others.

Therefore, for purposes of venue in this Lanham Act case, a "substantial part" of the events

giving rise to Sazerac's claims occur in this district. *See Cottman Transmission Sys.*, 36 F.3d at

295. And now, as alleged in Sazerac's amended complaint, which supersedes and relates back to

the date of original complaint under Fed. R. Civ. P. 15(c), Defendant's infringing activities have

occurred in this district because it has now shipped and distributed its SINFIRE cinnamon

whisky in Kentucky and in this district. (Dkt. No. 26 at ¶¶ 31-34.) Venue is therefore proper.

> **B.——Venue Is Also Proper Because this Court Has Personal Jurisdiction Over Defendant.**

Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district in which any

defendant resides, if all defendants are residents of the State in which the district is located."

Under 28 U.S.C. § 1391(c)(2), a corporation is deemed to reside "in any judicial district in which

such defendant is subject to the court's personal jurisdiction." Personal jurisdiction exists over a

defendant when the forum state's long-arm statute reaches the defendant and exercising personal

jurisdiction would not deny the defendant due process. *Bird v. Parsons,* 289 F.3d 865, 871 (6th

Cir. 2002) (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174,

1176 (6th Cir. 1992)). Sazerac need only make a *prima facie* showing of personal jurisdiction

and this Court must draw all permissible inferences in favor of Sazerac at this stage in the

proceedings. *Id.* at 871-872.

The facts alleged in Sazerac's original complaint (and re-alleged in the amended

complaint) are more than sufficient to establish this Court's personal jurisdiction over Defendant.

Defendant markets and distributes its products in Kentucky, and specifically, in this district, and

Defendant had immediate plans to ship and distribute the product at issue in this litigation—its

SINFIRE cinnamon whisky—in Kentucky and in this district. (Dkt. No. 1 at ¶¶ 28-29.) As

explained below, Defendant's contacts with the state of Kentucky satisfy the long-arm statute and ensure that exercising personal jurisdiction over Defendant will not violate its due process.  In addition, Sazerac's amended complaint pleads additional allegations that establish personal jurisdiction, namely, that Defendant has now shipped its SINFIRE cinnamon whisky to Kentucky, and specifically, in this district.  (Dkt. No.  26 at ¶¶ 31-34.)

### ~~B.1.~~  Kentucky's Long-Arm Statute Reaches Defendant.

Kentucky's long-arm statute enumerates nine distinct instances in which Kentucky courts may exercise personal jurisdiction over a nonresident.  KRS 454.210(2)(a).  In order to satisfy the long-arm statute, Sazerac's claims must "arise from" any one of the statutory predicates for long-arm jurisdiction.  *See* KRS 454.210(2)(a).  Here, three of the nine authorize extension of long-arm jurisdiction over Defendant: Sazerac's claims arise from Defendant (1) "[t]ransacting [] business in this Commonwealth"; (2) "contracting to supply … goods in this Commonwealth"; and (3) "causing tortious injury by an act … in this Commonwealth."  KRS 454.210(2)(a)(1)-(3).

Defendant argues that the Kentucky long-arm statute does not reach it because under *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d. 51, 59 (Ky. 2011) ("*Caesars*"), "the cause of action must 'aris[e] from' the identified conduct" and at the time Sazerac filed its original complaint, it had not yet distributed SINFIRE whisky in Kentucky.  (Dkt. No. 25-1 at 6.)  Prior to *Caesars*, courts did not separately analyze Kentucky's long-arm statute.  In *Caesars*, the Kentucky Supreme Court ruled that the long-arm statute does not merge with the analysis of due process for personal jurisdiction under the Constitution and must be analyzed separately.  336 S.W.3d. at 59.  The case law applying the Kentucky long-arm statute after *Caesar* is limited, and there have not been any such cases involving federal trademark and trade dress infringement.

However, applying the framework that the Kentucky Supreme Court set forth in *Caesars* shows that Sazerac's claims do in fact "arise from" Defendant's contacts with Kentucky and that

jurisdiction is properly exercised.  In *Caesars,* to determine whether jurisdiction was properly exercised, the court compared the wrongful acts underlying plaintiff's claims to the defendant's conduct and activities in Kentucky to determine whether the wrongful acts had a direct relation with the defendant's conduct.  *Id.*  The court held that a claim "arises from" a defendant's contacts with this state and jurisdiction is properly exercised when there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction.  *Id.*

A comparison of the wrongful acts underlying Sazerac's claims—namely, Defendant's use of an infringing mark and trade dress in connection with its SINFIRE cinnamon whisky—to Defendant's specific conduct and activities in Kentucky—marketing, distributing and selling its distilled spirits in Kentucky, and its immediate plans to also ship its SINFIRE cinnamon whisky to Kentucky—demonstrates that the wrongful acts have a direct relation with Defendant's conduct and activities within the state.  There is a reasonable and direct nexus between Defendant's conduct and activities in Kentucky and Sazerac's claims.  Under *Caesars*, Sazerac's claims "arise from" Defendant's transacting business and contracting to supply product in Kentucky and causing tortious injury in Kentucky.[1]  Therefore, the long-arm statute reaches Defendant.  *See id.*

Sazerac's amended complaint, which includes allegations that Defendant has now shipped 56 cases of its SINFIRE cinnamon whisky to its Kentucky distributor located in this district for ultimate retail sales to Kentucky residents (Dkt. No. 26 at ¶¶ 31-34)—a fact confirmed by Defendant in its motion (*see* Dkt. No. 25-1 at 3)—further evidences that Defendant

---

1 "Violations of federal trademark law are analogous to tort cases" and "the injury occurs both in places where the plaintiff does business and in the state where its primary office is located." *Bird v. Parsons,* 289 F.3d 865, 876 (6th Cir. 2002) (citations omitted).

is subject to personal jurisdiction in this district.  Sazerac's amended complaint is the legally

operative complaint, and as such supersedes the original complaint and relates back to the date of

the original complaint under Fed. R. Civ. P. 15(c).  *See Scuba v. Wilkinson,* No. 1:06CV160, 2006

WL 2794939, at *2 (S.D. Ohio Sept. 27, 2006) (citing *Parry v. Mohawk Motors of Mich., Inc.,*

236 F.3d 299, 306 (6th Cir. 2000), *cert. denied,* 533 U.S. 951 (2001)) (amended complaint

supersedes the original complaint and is the "legally operative complaint").  Thus, there is no

doubt that the Kentucky long-arm statute reaches Defendant, but, even if there was, "the benefit

of the doubt [is given] in favor of jurisdiction."  *Caesars*, 336 S.W.3d. at 58.

### B.2.   Exercising Personal Jurisdiction Over Defendant Will Not Violate Defendant's Due Process.

In order for due process to permit the exercise of personal jurisdiction over a non-resident

defendant, the defendant must have "certain minimum contacts with [the forum] such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Youn v. Track, Inc.,* 324 F.3d 409, 417-18 (6th Cir.2003) (quoting *Int'l Shoe Co. v. Washington,*

326 U.S. 310, 316 (1945)).

"Personal jurisdiction can be either general or specific, depending upon the nature of the

contacts that the defendant has with the forum state."  *Bird v. Parsons*, 289 F.3d 865, 873 (6th

Cir. 2002) (citing *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)).  Because

Sazerac's claims arise from Defendant's contacts with Kentucky, specific jurisdiction exists.  *See*

*id.*

In *Southern Machine Co. v. Mohasco Industries, Inc.,* the Sixth Circuit established a

three-part test for determining whether the exercise of specific jurisdiction was consistent with

the principles of due process:

> First, the defendant must purposefully avail himself of the
> privilege of acting in the forum state or causing a consequence in

the forum state. Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir.1968) (hereinafter, referred to as "the *Mohasco* test.")  As explained below, the *Mohasco* test is satisfied because (1) Defendant ships and distributes product in this state for ultimate retail sale to Kentucky residents, (2) Sazerac's claims arise from and are directly related to Defendant's contacts with this state, and (3) Defendant's infringement will cause injury to Sazerac in this state and is likely to confuse the residents of Kentucky.

> ### ~~B.2.a.~~ Defendant Has Purposefully Availed Itself of the Privileges of Acting in the Forum State By Shipping and Distributing Its Product in this District for Ultimate Retail Sale to Kentucky Residents.

"Purposeful availment," the "constitutional touchstone" of personal jurisdiction, is present where the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (emphasis in original), and where the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980)). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp.,* 471 U.S. at 475 (internal citation omitted).

The facts alleged in Sazerac's original complaint show that Defendant has purposefully availed itself of the privileges of acting in Kentucky because it has targeted this forum and seeks to serve its residents by shipping and distributing its products in Kentucky (as well as in this

district) and advertises on its website that its products are available in Kentucky. *See e.g.,* *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 891 (6th Cir. 2002) (defendant conducted business with the residents of the forum state and performed part of its services in the forum state by mailing test results there and providing passwords to the forum state's residents so they could access defendant's website); *Bird*, 289 F.3d at 875 (the proffered evidence that the defendant regularly chooses to do business with the forum state's residents by maintaining a website on which those residents can register domains and by allegedly accepting business from those residents satisfied the purposeful-availment requirement); *Community Trust Bancorp*, 2011 WL 673751, at *6 (finding the purposeful-availment requirement satisfied where defendant sent passwords to Kentucky residents to permit them to engage in online banking).

The fact that Defendant lacks a physical presence in Kentucky is unavailing. The Supreme Court has stated that "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp.*, 471 U.S. at 476 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774–75 (1984)). A defendant may "be subject to jurisdiction without entering the forum ... as where manufacturers or distributors 'seek to serve' a given State's market." *J. McIntyre Mach., Ltd. v. Nicastro,* 131 S.Ct. 2780, 2788 (2011) (stating that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum" (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 295)). Defendant uses a Louisville-based distributor to ship and distribute its products throughout Kentucky, including in this district. (Mayall Decl., Ex. C.) Defendant's activities demonstrate its efforts to reach residents of Kentucky and that Kentucky is one of the specifically targeted markets it "seek[s] to serve." *See*

*World–Wide Volkswagen,* 444 U.S. at 295.    Thus, Defendant's contacts with Kentucky proximately result from *Defendant's* actions and it has purposefully availed itself of the privileges of acting within this state, thus satisfying the first prong of the *Mohasco* test.

### ~~B.2.b.~~ Sazerac's Cause of Action Arises from Defendant's Activities in Kentucky.

This second factor of the *Mohasco* test "requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1091 (6th Cir.1989) (quoting *Mohasco,* 401 F.2d at 384 n.27).    "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Mohasco,* 401 F.2d at 384 n.29.    As discussed above, Sazerac's claims arise from Defendant's contacts with the state and therefore satisfy the second prong of the *Mohasco* test. (*See supra*, Section II.B.1.)

### ~~B.2.c.~~ Defendant's Connection with the Forum State Is So Substantial That the Exercise of Jurisdiction Over Defendant Is Reasonable.

The third and final prong in the federal due process analysis requires that the exercise of personal jurisdiction over a defendant be reasonable.    The Sixth Circuit has held that where the first two prongs of the *Mohasco* test have been met, "an inference arises that this third factor is also present."    *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996); *see Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG,* 196 F. App'x 366, 372 (6th Cir. 2006) (noting that a finding that the first two prongs of *Mohasco* have been met leads to a presumption that jurisdiction is proper, except in "unusual cases").    "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction

would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476 (quoting *Int'l Shoe,* 326 U.S. at 320). These factors include "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe,* 89 F.3d at 1268 (quoting *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169–70 (6th Cir. 1988)).

In *Bird*, a Sixth Circuit case that found specific jurisdiction existed for a non-resident corporation that was alleged to infringe the plaintiff's trademark and copyrights, the Court held that the third and final prong of the *Mohasco* test was satisfied. The Court found that (1) although defendant might face a burden in having to defend a lawsuit in the forum state, it could not reasonably object to this burden given the defendant allegedly transacted business with numerous residents of the forum state, (2) the forum state has a legitimate interest in protecting the business interest of its citizens, (3) plaintiff had an obvious interest in obtaining relief, (4) the forum state might be the only forum where jurisdiction exists over all defendants, and (5) although defendant's home state also had an interest because the claims involve its citizens, this interest does not override the other factors suggesting that personal jurisdiction in the forum state is reasonable. *Bird*, 289 F.3d at 875-876.

For the same reasons, the third and final prong of the *Mohasco* test is satisfied here. Although Defendant might face a burden in having to defend a lawsuit in Kentucky as opposed to its home state of Oregon, it cannot reasonably object to this burden because it regularly conducts business in this state by distributing and shipping product in Kentucky for ultimate retail sale to Kentucky residents. (Dkt. No. 25-1 at 3.) Kentucky has a legitimate interest in protecting its residents from consumer confusion and in protecting Sazerac from economic harm as a result of Defendant's infringing activities. Sazerac has an obvious interest in obtaining relief

in this state—it bottles and labels one hundred and fifty brands in this state, including one of the brands that it is asserting in this litigation, its FIREBALL cinnamon whisky, operates three distilleries here, and employs over 700 Kentucky residents.  (Wyant Decl., ¶¶ 5, 6, 8.)  And just as in *Bird*, although Defendant's home state of Oregon also has an interest in this suit, that interest does not override the other factors to be considered, all of which support the conclusion that personal jurisdiction is reasonable.

Based on the forgoing, the Court should deny Defendant's Motion pursuant to 28 U.S.C. §§ 1631 and 1406(a).  The facts alleged in Sazerac's original complaint are more than sufficient to show that this Court has personal jurisdiction over Defendant and that venue is proper.  Moreover, Sazerac's amended complaint, which supersedes the original complaint and relates back to the date of the original complaint, includes additional allegations that Defendant has now shipped and distributed its SINFIRE cinnamon whisky, the product at the heart of this lawsuit, in Kentucky and in this district.  (Dkt. No. 26 at ¶¶ 31-34.).  These allegations make clear that Defendant's contacts with this state give rise to Sazerac's claims and that this Court has personal jurisdiction over Defendant.

C.——**This District Is Not An Inconvenient Forum.**

Defendant asks this Court to disturb Sazerac's choice of forum and transfer this case to Oregon pursuant to Section 1404(a).  Defendant's request should be denied.

Determining whether to transfer this case for *forum non-convenience* involves a two-part inquiry.   First, the Court must determine whether the action "might have been brought" in the District of Oregon.  *Rutherford v. Goodyear Tire and Rubber Co.*, 943 F.Supp. 789, 791 (W.D.Ky. 1996).  "Second, the Court must determine whether the change of venue would facilitate the 'convenience of the parties and witnesses' and serve 'the interests of justice.'" *Id.*  Defendant fails to satisfy the second part of this inquiry.

This district is the most convenient forum for Sazerac and its witnesses. Kentucky is very much home for Sazerac, even though it may be organized under the laws of Louisiana. Sazerac operates three bottling facilities in Kentucky that collectively bottle and label a hundred and fifty different Sazerac brands, including its FIREBALL cinnamon whisky, one of the brands infringed by Defendant's SINFIRE cinnamon whisky. (Wyant Decl., at ¶ 6.) And as previously noted, Sazerac owns and operates three distilleries in Kentucky; maintains corporate offices in Louisville and Frankfort, Kentucky; employs over 700 individuals in Kentucky; and key members of its management, including its CEO and CFO, live and work in Kentucky. (*Id.* at ¶¶ 5, 7.) As such, pertinent evidence and witnesses pertaining to this case are located in Kentucky. Furthermore, for any witnesses residing in Louisiana, travel to Kentucky is not only necessary at times, but much more convenient than traveling to Oregon.

Defendant would have the Court believe that Oregon is a more convenient forum for both parties, yet Sazerac has no offices, management, distilleries, or production facilities in Oregon and no Oregon-based employees. (Wyant Decl., ¶¶ 9-13.) Any inconvenience to Defendant in litigating this case in Kentucky does not outweigh Sazerac's choice of forum nor Sazerac's extensive ties to Kentucky and the convenience of litigating its case here. *See Long John Silver's Inc. v. Nickleson*, Case No. 3:11-CV-93-H, 2011 WL 5025347, at *4 (W.D.Ky. Oct. 21, 2011) ("Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") (quoting *Nicol v. Koscinski,* 188 F.2d 537 (6th Cir.1951)).

Finally, as mentioned above, this Court has a strong public interest in protecting Sazerac from Defendant's infringing activities as well as Kentucky residents from consumer confusion that will inevitably occur in this district. The inconvenience alleged by Defendant does not outweigh Sazerac's choice of forum.

IV.——CONCLUSION

Based on the forgoing, Sazerac respectfully requests that this Court deny Defendant's

Motion in its entirety.

 Dated:  April 30, 2012

 

_____

Scott P. Zoppoth
**The Zoppoth Law Firm**
1600 Kentucky Home Life Building
239 South Fifth Street
Louisville, KY 40202
Telephone: (502) 568-8884
Fax: (502) 568-1319
spz@zoplaw.com

Peter J. Willsey
pwillsey@cooley.com
**Cooley LLP**
777 6th Street, NW, Ste 1100
Washington, D.C. 20001
Telephone: (202) 842-7800
Fax: (202) 842-7899

Todd S. Bontemps
tbontemps@cooley.com
Lori F. Mayall
lmayall@cooley.com
**Cooley LLP**
5 Palo Alto Sq., 3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Fax: (650) 849-7400

Attorneys for Plaintiff **Sazerac Company, Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the following individual and address listed below on this 30th day of April, 2012.


Thomas O'Brien, III
J. Michael Hearon
Frost Brown Todd, LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202

/s/ Scott P. Zoppoth
Scott P. Zoppoth
KY Bar No. 83905
The Zoppoth Law Firm
1600 Kentucky Home Life Bldg.
239 South 5th Street
Louisville, KY 40202
(502) 568-8884
spz@spzlaw.com
