UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SAZERAC COMPANY, INC.                                                   PLAINTIFF

v.                                          CIVIL ACTION NO. 3:12CV-79-S

HOOD RIVER DISTILLERS, INC.                                DEFENDANT

## MEMORANDUM OPINION

This matter is before the court for consideration of the following motions:

(1) Motion of the defendant, Hood River Distillers, Inc., to transfer the action to the United States District Court for the District of Oregon. DN 25.

(2) Motion of the defendant, Hood River Distillers, Inc., to strike the first amended complaint or, alternatively, for an extension of time to answer. DN 30.

(3) Motion of the plaintiff, Sazerac Company, Inc., for hearing and oral argument. DN 33.

This action alleges trademark and trade dress infringement by the defendant, Hood River Distillers, Inc. ("Hood River"), in the marketing and distribution of its SINFIRE cinnamon whiskey. Hood River is an Oregon corporation with its principal place of business in Hood River, Oregon. The plaintiff, Sazerac Company, Inc. ("Sazerac"), is a Louisiana corporation with its principal place of business in New Orleans. Both Hood River and Sazerac are producers and sellers of a variety of distilled spirits.

Sazerac owns and operates three distilleries in Kentucky – Buffalo Trace Distillery, Barton 1792 Distillery, and Glenmore Distillery. Sazerac produces FIREBALL cinnamon whiskey and FIRE WATER hot cinnamon liqueur which are bottled and labeled in Montreal, Canada and

Kentucky. Hood River produces and bottles SINFIRE cinnamon whiskey in Oregon. Sazerac contends that Hood River's use of the SINFIRE mark infringes Sazerac's trademarks and trade dress of its FIREBALL and FIRE WATER products.

Hood River's SINFIRE is a new product in 2012. On August 17, 2011, Hood River filed an intent-to-use trademark application with the U.S. Patent and Trademark Office (Serial No. 85/400,560) for SINFIRE for "Distilled Spirits." It obtained a Certificate/Exemption of Label/Bottle Approval for its SINFIRE cinnamon whiskey label from the United States Alcohol and Tobacco Tax and Trade Bureau on December 16, 2011. Having gotten wind of this activity, on December 27, 2011, Sazerac sent Hood River a cease and desist letter concerning the use of the SINFIRE name and trade dress in connection with its cinnamon whiskey product. Hood River responded to the letter, denying that its mark and trade dress infringe.

On January 30, 2012, Hood River issued a press release stating that SINFIRE would be "[a]vailable for national distribution in February 2012." Hood River was already marketing and distributing various whiskeys and other distilled spirits in Kentucky. On February 10, 2012, Sazerac filed this lawsuit against Hood River alleging imminent trademark and trade dress infringement and unfair competition in Kentucky through the anticipated sales of SINFIRE in Kentucky. It sought injunctive relief in advance of actual sales of the product in Kentucky, disallowance of Hood River's trademark registration,[1] and damages.

On April 6, 2012, Hood River answered the complaint and counterclaimed against Sazerac. In its answer, it acknowledged that SINFIRE became available for national distribution in February

---

[1] It is unclear from the pleadings and documents whether the SINFIRE trademark application has been approved and the mark registered. The name bears "TM" rather than "®" on the Hood River products website. Both the original and amended complaints sought an order to "disallow registration of trademark Serial No. 85/400,560." However, this point is immaterial to the court's determination of the present motions.

2012. It also asserted a counterclaim challenging the validity of the Sazerac trademarks and seeking cancellation of the trademark registrations.

Hood River filed a motion to transfer the matter to Oregon, urging lack of personal jurisdiction over Hood River, improper venue, and inconvenience. On April 26, 2012, Sazerac filed an amended complaint, and on April 30, 2012, filed an answer the to counterclaim. There does not appear to be any dispute that Hood River had not shipped any of its SINFIRE product for distribution in Kentucky at the time of the filing of the complaint. In its amended complaint Sazerac has alleged that on or about March 26, 2012, fifty-six cases of SINFIRE were shipped for distribution in Kentucky.

On May 10, 2012, Hood River filed a motion to strike the amended complaint on the ground that it had been filed without leave of court, or alternatively, requesting an extension of time to file an answer. These motions were fully briefed. On May 21, 2012, Sazerac filed a motion for a hearing on the pending motions, seeking an opportunity to "better elucidate the court on the reasons why Defendant's requested relief is unwarranted." DN 33, p. 2, ¶ 3. Sazerac has not sought to submit any further briefing on the matters in issue.

First, we find that oral argument on the pending motions is unnecessary. The matters have been fully briefed, and the issues are relatively straightforward. Therefore, Sazerac's motion for a hearing (DN 33) will be denied.

Hood River has moved for transfer of the action to Oregon under 28 U.S.C. § 1631 and § 1406(a) on the grounds that the court lacks personal jurisdiction over it, and that the Western District of Kentucky is an improper venue for Sazerac's claims. It alternatively contends that the matter

should be transferred to Oregon under 28 U.S.C. § 1404(a) because Kentucky is an inconvenient forum.

28 U.S.C. § 1631 states that "[w]henever a civil action is filed in a court...and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action...to any other such court in which the action...could have been brought at the time it was filed..."

28 U.S.C. § 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Venue is proper in a civil action where jurisdiction is not founded solely on diversity of citizenship in a judicial district where any defendant resides, or in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. *See, in pertinent part*, 28 U.S.C. § 1391(b). This action is brought under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and state law. The action thus implicates our federal question and supplemental jurisdiction (28 U.S.C. §§ 1331, 1338 and 1367(a)), rendering § 1391(b) the proper venue provision.

In *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002), the United States Court of Appeals for the Sixth Circuit stated:

> Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)(internal citations omitted).

The plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant. In deciding the matter without an evidentiary hearing, the court must construe the facts in the light most favorable to the plaintiff. The plaintiff may meet this burden by establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction. *See Neogen Corporation v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) and cases cited therein.

Hood River contends that personal jurisdiction over it was lacking at the time the suit was filed because its contacts with Kentucky did not satisfy the requirements of any provision of the Kentucky long-arm statute which would permit it to be haled into a Kentucky court. Therefore, it urges the court to transfer the action to Oregon where it was and remains amenable to suit.[2]

Sazerac urges that venue is proper in Kentucky because "a substantial part of the events or omissions giving rise to the claim occurred" in Kentucky. § 1391(b)(2). A "substantial part" of the events occurs in a district where consumers are likely to be confused by the accused goods. *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994).

As noted in *Cottman*, "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute," and "[e]vents or omission that might only have some tangential connection with the dispute in litigation are not enough. 36 F.3d at 294.

The court concluded in *Cottman* that the unauthorized act of passing off the trademarks in issue occurred where the franchisee was offering his transmission services and the public was likely to be confused as to the source of the services. *See also Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d

---

[2] Sazarac has not argued alternatively for dismissal of the action without prejudice. The court will consider only the relief which was requested by the parties, retention of the suit or transfer to Oregon.

- 5 -

633, 639 (2d Cir. 1956)("[I]n cases involving trademark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the good are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.")(*quoted in Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F.Supp.2d 1282, 1286 (D.Ariz. 2009).

Sazerac urges that confusion is likely to occur in Kentucky when SINFIRE is sold in competition with Sazerac's FIREBALL and FIRE WATER products. Sazerac contends that personal jurisdiction may be had over Hood River since Hood River regularly conducts business in this district when it ships and distributes its products, including SINFIRE, for sale in Kentucky.

Although Hood River did not distribute SINFIRE for sale in Kentucky until March 2012, Sazerac urges that, at the time of the filing of the complaint, Hood River had taken steps to ultimately do so. Sazerac has now filed an amended complaint which it contends "relates back" to the filing of the original complaint and affords it personal jurisdiction over Hood River *ab initio*.

Hood River has moved to strike Sazerac's amended complaint. It contends that the claim that Hood River now markets and distributes SINFIRE in Kentucky is supplemental to the claims in the original complaint. Hood River is correct. Sazerac could not amend its complaint under Fed.R.Civ.P. 15(a)(1)(B) as a matter of course. Rather, Sazerac was required to seek leave of court to file a supplemental pleading under Fed.R.Civ.P. 15(d) to allege sales of SINFIRE which purportedly occurred after the filing of the original complaint.

Sazerac was required to seek leave to file the amendment as a supplemental pleading.[3] We do not find it necessary to strike the pleading, however. Had Sazerac sought leave to file a

---

[3] The amended pleading contains other allegations which appear to amend earlier claims. We do not address them here. The arguments presently before the court revolve around the allegation of the distribution of SINFIRE in Kentucky in March 2012.

- 7 -

supplemental complaint, the court would likely have granted such leave. Rather than strike it, we will treat the pleading as a supplemental complaint to the extent that it adds allegations concerning events which occurred after the filing of the original complaint. *See, ie. Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377 (Fed.Cir. 2010)("in the interest of 'completeness,'" district court treated Amended Complaint as if an authorized supplemental complaint in assessing whether case or controversy existed). Hood River's motion to strike the amended complaint (DN 30) will therefore be denied. Hood River's request for an extension of time in which to answer the amended complaint will be granted.

Hood River argues that due process is not satisfied, as the court lacks personal jurisdiction over Hood River under the Kentucky long-arm statute, KRS 454.210, and the exercise of jurisdiction over it does not comport with the requirements of due process. It seeks transfer of venue to the District of Oregon where the suit might have been brought. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)("Personal jurisdiction ... is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." (citation, ellipses, and internal quotation marks omitted)).

As recently reaffirmed in *Community Trust Bancorp, Inc. v. Community Trust Financial Corporation*, 692 F.3d 469 (6th Cir. 2012),

> When a federal court has "federal question [jurisdiction], personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)(second alteration in original)(internal quotation marks omitted).
>
> ...To determine whether a plaintiff's exercise of jurisdiction satisfies due process, we apply a three-part specific jurisdiction analysis:

- 7 -

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

> As "the constitutional touchstone" of personal jurisdiction, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the purposeful availment requirement ensures that the defendant's actions create a "substantial connection" to the forum state, such that the defendant "should reasonably anticipate being haled into court there," *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)(internal quotation marks omitted).

*Community Trust*, 692 F.3d at 471-72.

The purpose underlying Kentucky's long-arm statute is "to permit Kentucky courts to exercise personal jurisdiction over nonresident defendants while complying with federal constitutional due process." *Cummings v. Pitman*, 239 S.W.3d 77, 84 (Ky. 2007). KRS 454.210(2)(a) states, in pertinent part,[4]

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> (1) Transacting any business in this Commonwealth;
>
> (2) Contracting to supply services or goods in this Commonwealth;
>
> (3) Causing tortious injury by an act or omission in this Commonwealth...

---

[4] Sazerac urges that subsections 1, 2, and 4 apply to establish personal jurisdiction over Hood River. Opp. to Mo. to Transfer, p. *8.

Hood River contends that it did not purposefully avail itself of the privilege of doing business in Kentucky, as, at the time the action was filed, it had not sold any of its SINFIRE product in Kentucky. It did, however, sell other products in Kentucky. Such contacts with Kentucky are insufficient to establish personal jurisdiction over Hood River, as the causes of action against Hood River did not arise from sales of those other products.

In *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011), the Kentucky Supreme Court gave meaning to the preamble to the long-arm statute, giving effect to the language that a plaintiffs claim or claims must "aris[e] from" the defendant's acts in the Commonwealth. The court held that in order to prosecute a claim in Kentucky under the long-arm statute, the cause of action must have "originated from, or come into being as a result of" the defendant's transacting business, contracting to supply goods or services, or causing tortious injury by an act or omission in Kentucky. 336 S.W.3d at 58. The court explained:

> ...[T]he wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction. Conversely, the statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action. If there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction, then jurisdiction is properly exercised.

336 S.W.3d at 58-59. The court noted that a common-sense analysis must be undertaken on a case-by-case basis. *Id.* at 59.

The marketing of SINFIRE was alleged to have begun in January 2012 prior to the filing of the action but distribution did not begin in Kentucky until March. Distribution of SINFIRE was anticipated in the original complaint, and was the reason for a demand for injunctive relief in

- 9 -

advance of actual sales. As noted in *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328, 1335 (E.D.Mo. 1996), "A Lanham Act claim can exist even before a defendant actually opens the business, so long as the acts of defendant are imminent and impending." *See 5 McCarthy on Trademarks and Unfair Competition, Fourth Ed.* § 30.10 and cases cited therein. However, Sazerac can only maintain such a claim in a forum in which it may obtain process over the defendant.

Sazerac's assertion of personal jurisdiction over Hood River fails under the requirements of *Caesars*. While Hood River sold other products in Kentucky prior to the filing of the complaint, the claims against it have no nexus to sales of any liquor other than SINFIRE. Sazerac has not alleged any tortious injury caused by an act of Hood River in Kentucky or any contracts entered into by Hood River prior to the filing of the complaint. Sazerac has thus failed to carry its burden to establish personal jurisdiction over Hood River.

The original complaint delineated steps taken by Hood River prior to and in preparation for the launch of its SINFIRE product. Sazerac urges that the supplemental complaint[5] therefore simply develops the previous allegations by confirming that the launch took place, as anticipated, in February 2012, and alleges that the Hood River shipped fifty-six cases of SINFIRE for retail sale in Kentucky on March 26, 2012. Thus Sazarac contends that the alleged acts of actual infringement which occurred after the filing of the complaint were the culmination of the anticipated infringement set out in the original complaint. Sazarac urges that, for purposes of personal jurisdiction over Hood River, the supplemental allegations of actual infringement should be found to "relate back" to the date of the original filing, and thus validate an invalid assertion of personal jurisdiction over Hood

---

[5]We will denominate the pleading as the "supplemental complaint" for all further purposes, in light of the ruling on Hood River's motion to strike.

- 10 -

River at the outset of the litigation. Sazerac cites Fed.R.Civ.P. 15(c)(1)(B) which states that an amendment relates back to the original pleading where it asserts a claim "ar[ising] out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading. Fed.R.Civ.P. 15(c)(1)(B).

This argument is unavailing. Despite Sazerac's attempt to finesse the facts, Hood River did not have sufficient contacts with Kentucky to render it amenable to process under the Kentucky long-arm statute. SINFIRE had not been shipped for distribution in Kentucky at the time of the filing of the original complaint. At the outset of the litigation, Hood River had no contacts with Kentucky related to either anticipated or actual use of the SINFIRE mark. Admittedly, various other Hood River products were distributed in Kentucky in 2011 and SINFIRE is distributed in Kentucky now. But Hood River's other products are not at issue in this action, and Sazarac has cited no authority for the proposition that distribution of SINFIRE in Kentucky on a date after the filing of the complaint can remedy the lack of personal jurisdiction over the defendants at the inception of the suit. Hood River had merely taken steps directed toward the anticipated use of its SINFIRE mark on its product and had issued a press release announcing the impending national release of SINFIRE. This activity occurred prior to the filing of the complaint, but it is not alleged to have occurred in Kentucky, to have caused injury in Kentucky, or to have been related to Hood River's other activities in Kentucky. All of Hood River's operations are in Oregon, and quite simply, this anticipatory suit should have been filed in Oregon where Sazerac could have obtained personal jurisdiction over Hood River. It is of no moment that the possibility of valid process under the long-arm statute has developed as a result of subsequent events. The court has found no cases, and Sazerac has cited none, which permit personal jurisdiction to be established retrospectively where

it was clearly lacking at the inception of the suit. Indeed, to permit a finding of personal jurisdiction *ab initio* on these facts would render the due process protections afforded the defendants a nullity.

As stated in *Innovative Therapies*, 599 F.3d at 7383, in an opinion addressing the existence of a case or controversy,

> Federal Rule of Civil Procedure 15(c) does not treat events that post-date the original pleading as if they had occurred at an earlier time. The district court so recognized when it treated the Amended Complaint as a supplemental, rather than an amended, pleading. We discern no error in the district court's conclusion that [the plaintiff's] supplemental complaint did not establish an actual controversy at the time of the original pleading, and that jurisdiction based on subsequent events did not relate back to the filing date of the initial complaint.

Although the case did not address personal jurisdiction, we find the analysis of Rule 15(c) in *Innovative Therapies* to be sound.

The parties agree that the action might properly have been brought in the District of Oregon. Hood River has moved to transfer the action to the United States District Court for the District of Oregon. It is undisputed that Hood River manufactures and distributes its SINFIRE product from its one and only Oregon facility. It does market and distribute its products nationally, including in Kentucky. Its Chief Financial Officer, Gary Goatcher, has confirmed that in 2011, Hood River shipped 211 cases of Hood River products other than SINFIRE for distribution in Kentucky. Goatcher Aff., ¶ 10. Goatcher also confirmed that Hood River shipped 56 cases of SINFIRE to an independent distributor for retail sale in Kentucky on March 26, 2012. Goatcher Aff., ¶ 11. Hood River's management, research and development, and production employees are located in Oregon. Goatcher Aff., ¶ 6. The substantial majority of Hood River's witnesses, documents, and other materials related to the research and development and production of SINFIRE are also located in Oregon. Goatcher Aff., ¶ 9.

- 13 -

Based upon the foregoing, the court lacks personal jurisdiction over Hood River. Thus venue is improper in this district, and pursuant to 28 U.S.C. § 1406(a), the court will transfer the action to that forum where the action might have been brought. Transfer of the action to the District of Oregon will be granted. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

December 19, 2012

**Charles R. Simpson III, Judge**
**United States District Court**